FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

SEP 2 9 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

Scan

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY GRAHAM TROTTER,<br><br>                Petitioner,<br><br>    vs.<br><br>CHARLES HARRISON, Warden<br><br>            Respondent. | Case No. CV 05-8449-RSWL (RNB)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Ronald S.W. Lew, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## PROCEEDINGS

On December 1, 2005, petitioner filed a Petition for Writ of Corpus by a Person in State Custody ("Pet.") herein. Following multiple extensions of time, on April 7, 2006, respondent filed a Motion to Dismiss contending that petitioner's claims were time-barred. Pursuant to the Court's Order to Show Cause and subsequent orders of the Court, respondent withdrew the motion on June 5, 2006. On June 30, 2006,

///

DOCKETED ON CM

SEP 2 9 2006

BY                    040

1

1   respondent filed an Answer ("Ans."), to which petitioner ultimately filed a Reply and

2   attached exhibits on September 13, 2006.

3        Thus, this matter now is ready for decision.

4

5                          **PROCEDURAL HISTORY**

6        In a three-count Information filed by the District Attorney of Los Angeles

7   County on October 31, 1986, petitioner was charged with murder, residential burglary,

8   and robbery. In connection with the murder count, special circumstances were alleged

9   that the murder was committed while petitioner was engaged in the commission of a

10  burglary and a robbery within the meaning of California Penal Code ("CPC") §

11  190.2(a)(17). It further was alleged that, in the commission of the murder, petitioner

12  personally used a deadly and dangerous weapon within the meaning of CPC §

13  12022(b), to wit, a candlestick holder. (See Answer filed by respondents on February

14  25, 1992 in Case No. CV 91-6056-JSL ["Ans. 91-6056"], Exh. A, at 29-31).

15       On August 19, 1988, petitioner withdrew his not guilty plea, and instead

16  pleaded guilty to all three counts of the information. Petitioner also admitted the truth

17  of the special circumstances and enhancement allegations. (See Ans. 91-6056, Exh.

18  G, at 57). At the sentencing hearing, in accordance with the plea bargain agreement,

19  the trial court sentenced petitioner to life imprisonment without parole as to Count 1,

20  and stayed the respective prison terms as to Counts 2 and 3. The court also sentenced

21  petitioner to one year for use of a deadly weapon in the murder, pursuant to CPC §

22  12022(b). (See Ans. 91-6056, Exh. H, at 77-80).

23       Petitioner failed to timely appeal the judgment pronounced on September 22,

24  1988.[1]  However, on July 31, 1989, petitioner filed a petition in the Los Angeles

25  Superior Court denominated "Petition for Writ to Withdraw My Plea." (See Ans. 91-

26

27       [1]     Petitioner's notice of appeal lodged September 11, 1989, was rejected by

28  the Los Angeles Superior Court Clerk as untimely. (See Ans. 91-6056, Ex. K).

1   6056, Exh. I). Petitioner sought to withdraw his plea on the grounds that he allegedly
2   had been receiving psychiatric medication and therapy at the time, was mentally
3   "incapacitate" [sic] when the plea was entered, and was not knowledgeable about what
4   he was saying. (Id. at 95).

5        At a hearing conducted on August 9, 1989, the trial court advised that it had
6   read and considered petitioner's motion to withdraw his plea and also reviewed the
7   transcripts of the August 19, 1988 plea hearing and the September 22, 1988
8   sentencing hearing. After discussion with counsel, the court stated that it remained
9   satisfied that petitioner's plea of guilty, his admission of the special circumstances,
10  and his waiver of rights were knowingly, intelligently, and freely and voluntarily
11  entered. The court therefore denied petitioner's motion to withdraw his plea. (See
12  Ans. Exh. J, at 99-105).

13       Petitioner subsequently filed habeas petitions with the Superior Court, the
14  California Court of Appeal, and the California Supreme Court, all of which were
15  denied without any evidentiary hearings or citation of authority. (See Ans. 91-6056,
16  Exhs. M, N, O, and P).

17       On November 7, 1991, petitioner filed a Petition for Writ of Habeas Corpus by
18  a Person in State Custody in this Court, in Case No. CV 91-6056-JSL. Petitioner
19  claimed that his guilty plea was involuntary because he was mentally impaired at the
20  time of the plea hearing due to psychotropic drugs he was taking which prevented him
21  from entering an intelligent plea. Petitioner further claimed that his guilty plea was
22  the product of coercion and ineffective assistance of counsel. Finally, petitioner
23  claimed that the trial court failed to question him about the details of the crime to
24  determine whether the elements of each charge were satisfied.

25       On June 24, 1993, the then-assigned Magistrate Judge issued a Report and
26  Recommendation, recommending that the Petition be denied and dismissed with
27  prejudice. The Report and Recommendation addressed and rejected each of
28  petitioner's claims. After considering petitioner's ensuing objections, the Magistrate

Judge found no good reason set forth for changing or modifying his original recommendation, and issued a Final Report and Recommendation to that effect on July 22, 1993. The District Judge thereafter issued an order approving and adopting the Report and Recommendation and Final Report and Recommendation, and directing that Judgment be entered denying and dismissing the action with prejudice. Judgment was duly entered on August 10, 1993.

Petitioner timely appealed. In an unpublished Memorandum disposition issued December 6, 1994, the Ninth Circuit noted that petitioner had made two arguments on appeal: (1) that the District Court had abused its discretion by denying petitioner's motions for appointed counsel to help obtain his state medical records; and (2) that the District Court had erred by declining to hold an evidentiary hearing on the issue of whether petitioner's trial counsel was ineffective. The Ninth Circuit found that petitioner's claims were so intertwined that the second question (i.e., was petitioner denied the effective assistance of counsel) could not be answered without knowing the answer to the first question (i.e., would the unobtained medical records have made a difference). Because the relevant medical records might serve as a foundation for petitioner's claim of ineffective assistance, given that the plea proceedings presented "a somewhat thin and dubious record," the Ninth Circuit concluded that the judgment could not be affirmed on the record presented. Accordingly, the Ninth Circuit reversed and remanded, with directions to appoint counsel for petitioner and to hold an evidentiary hearing, if the evidence marshaled by counsel proved sufficient to require one.

Upon the spreading of the mandate and the transfer of the case to the calendar of Magistrate Judge Block, the Court appointed counsel to represent petitioner, in accordance with the Ninth Circuit's directive and petitioner's specific request.

On October 2, 1996, the Court issued a Report and Recommendation, recommending that the Petition be denied and dismissed with prejudice. After considering petitioner's objections, the Court found no good reason set forth for

4

1   changing or modifying its recommendation, and issued a Final Report and
2   Recommendation to that effect on November 21, 1996. The District Judge thereafter
3   issued an order approving and adopting the Report and Recommendation and Final
4   Report and Recommendation, and directing that Judgment be entered denying and
5   dismissing the action with prejudice. Judgment was duly entered on January 30, 1997.

6       Petitioner timely appealed once again. In an unpublished Memorandum
7   disposition issued September 21, 1998, the Ninth Circuit noted that petitioner was
8   claiming that the District Court had erred by denying his request for an evidentiary
9   hearing on petitioner's due process claims regarding his guilty plea. The Ninth Circuit
10  initially concluded that the District Court had not erred in not holding an evidentiary
11  hearing on petitioner's procedural claim that the trial court erred by not inquiring sua
12  sponte as to his competency, because petitioner had not alleged sufficient facts "to
13  have caused the court to have a bona fide doubt as to [his] competency." However,
14  the Ninth Circuit reasoned that the District Court had "conflated" petitioner's
15  substantive claim of incompetency to plead guilty with his "procedural" incompetency
16  claim, and likewise had misapprehended petitioner's claims of involuntariness and
17  ineffective assistance of counsel, "conflating them as well with his procedural
18  competency claim." Accordingly, the Ninth Circuit affirmed in part, reversed in part,
19  and remanded, with directions to determine whether to hold an evidentiary hearing
20  and to grant further investigatory funds.

21      Upon the spreading of the mandate, the Court reappointed the same counsel to
22  represent petitioner. In view of the Ninth Circuit's reasoning, the Court decided to
23  afford petitioner an evidentiary hearing on his claims of actual incompetence to plead
24  guilty, involuntariness in entering the plea, and ineffective assistance of counsel in
25  connection with petitioner's decision to plead. On November 12 and 17, 1999, and
26  ///
27  ///
28  ///

1   May 31, 2000, the Court held an evidentiary hearing on petitioner's claims.[2]

2       On January 10, 2001, the Court issued a Report and Recommendation wherein

3 the Court recommended that habeas relief be denied with respect to petitioner's

4 ineffective assistance of counsel claims; that habeas relief be denied with respect to

5 petitioner's claims that his guilty plea was not knowing, intelligent or voluntary

6 because it was the product of ineffective assistance of counsel and/or because he was

7 under the influence of medication at the time of the plea; but that habeas relief be

8 granted with respect to petitioner's claim that his admission of the truth of the special

9 circumstances allegations was not knowing and voluntary based on the lack of an

10 adequate factual basis.  Following the filing of objections to the Report and

11 Recommendation by respondent, and a notice of non-opposition by petitioner, the

12 District Judge issued an Order on April 3, 2001, adopting all of the Magistrate Judge's

13 findings, conclusions and recommendations, except for those pertaining to petitioner's

14 ineffective assistance of counsel claim in connection with the special circumstances

15 allegations.  The District Judge found that petitioner's claim that his admission of the

16 truth of the special circumstances allegations was not knowing and voluntary based

17 on the lack of an adequate factual basis was inextricably intertwined with petitioner's

18 claim of ineffective assistance of counsel with respect to the special circumstances

19 allegations because counsel permitted petitioner to give a defective plea and failed to

20 notice the issue for appeal purposes.  Accordingly, the District Judge granted habeas

21 relief with respect to both claims, and ordered that unless petitioner was brought to

22 trial on, or admitted anew the truth of, the special circumstances allegations, his

23 sentence should be reduced.

24 ///

25

26

27     [2]  Following the evidentiary hearing, petitioner abandoned his claims
concerning his alleged incompetency to plead guilty (which had served as the basis

28 of the Ninth Circuit's second remand order to the District Court in this case).

1   The special circumstances allegations were tried to a jury in Los Angeles

2   County Superior Court in May, 2002. The jury found the special allegations to be

3   true, and the trial court again sentenced petitioner to life in state prison without the

4   possibility of parole. (See Lodged Doc. No. 1; Clerk's Transcript ("CT") 123-26,

5   147-52).

6   Petitioner appealed from the judgment, alleging inter alia two claims

7   corresponding to the first and second claims alleged in the Petition herein–i.e., that the

8   trial court's response to a question posed by the jury was inadequate and violated

9   petitioner's right to a reliable jury determination, and that petitioner's counsel

10  rendered ineffective assistance when he failed to object to the trial court's response

11  and request a read-back of the jury instructions. On October 29, 2003, the California

12  Court of Appeal rejected petitioner's claims, and affirmed the judgment. (See Lodged

13  Doc. No. 2).

14  Petitioner then raised the same two claims in a Petition for Review to the

15  California Supreme Court, which was summarily denied on January 14, 2004. (See

16  Lodged Doc. Nos. 3, 4).

17  In the meantime, petitioner had filed a petition for writ of habeas corpus in the

18  California Supreme Court on December 17, 2003. Petitioner alleged therein that his

19  guilty pleas to the underlying charges were not knowingly and voluntarily entered,

20  and were the product of ineffective assistance of counsel; and that the District Court

21  had erred in rejecting these claims. (See Lodged Doc. No. 5). The California

22  Supreme Court denied that petition on October 13, 2004. (See Lodged Doc. No. 6).

23  Prior to the California Supreme Court's ruling on the foregoing habeas petition,

24  petitioner filed another habeas petition in the Superior Court on May 5, 2004. The

25  claims alleged therein were directed to petitioner's resentence based on the special

26  circumstances findings. Specifically, petitioner alleged three claims corresponding

27  to third, fourth and fifth claims alleged in the Petition herein–i.e., that the trial court

28  had mistakenly believed it did not have discretion to dismiss the special circumstances

7

findings in the furtherance and/or the interest of justice pursuant to CPC § 1385; that the trial court should have ordered a diagnostic study and evaluation report; and that petitioner's counsel had rendered ineffective assistance in failing to interview and subpoena witnesses to testify at the sentencing hearing regarding petitioner's positive behavior in prison. (See Lodged Doc. No. 14). The petition was denied with a brief reasoned decision on May 20, 2004. (See Lodged Doc. No. 12, Exh. 2-Z). Next, petitioner raised these same claims in a habeas petition to the California Court of Appeal on August 27, 2004, which was summarily denied on September 8, 2004, with citations to In Re Clark, 5 Cal. 4th 750, 855 P.2d 729, 21 Cal. Rptr. 2d 509 (1993), and In Re Swain, 34 Cal.2d 300, 303-04, 209 P.2d 793 (1949). (See Lodged Doc. Nos. 7, Exh. 3-Z, 10, 12).[3]

Petitioner then filed a habeas petition in the California Supreme Court on September 20, 2004, raising the same claims he had raised in his Superior Court and Court of Appeal habeas petitions. (See Lodged Doc. No. 7).

Petitioner's California Supreme Court habeas petition was still pending when petitioner lodged for filing another Petition for Writ of Habeas Corpus by a Person in State Custody in this Court, in Case No. CV 04-9977-RSWL (RNB). (See Lodged Doc. No. 8). On January 11, 2005, respondent moved to dismiss that petition on the ground that petitioner had failed to exhaust his state remedies based on the pendency of his California Supreme Court habeas petition. After duly considering petitioner's opposition, the Court issued a Report and Recommendation on April 28, 2005 wherein the Court recommended that the petition be denied without prejudice. On June 17, 2005, the District Judge issued an Order adopting the recommendation and dismissing the action without prejudice.

---

[3]      Petitioner also filed a petition for writ of mandate/prohibition in the California Court of Appeal on November 1, 2004, seeking discovery related to his trial on the special circumstances allegation. That petition was denied on November 10, 2004. (See Lodged Doc. No. 13).

1    Petitioner's California Supreme Court habeas petition was summarily denied on
2  August 10, 2005, with a citation to <u>In Re Clark</u>, 5 Cal. 4th 750, 855 P.2d 729, 21 Cal.
3  Rptr. 2d 509 (1993).  (<u>See</u> Lodged Doc. No. 9).  The filing of the instant Petition
4  followed on December 1, 2005.

5

6              **SUMMARY OF THE EVIDENCE PRESENTED AT TRIAL**

7         Since petitioner is not challenging the sufficiency of the evidence to support his
8  underlying conviction, the following factual summary is taken from the California
9  Court of Appeal opinion (<u>see</u>  Lodged Doc. No. 2 at 3-5):

10       *1.     Prosecution's evidence*

11       *… The victim, Charlene Hartsough, and her husband, Christopher Hartsough,[4]*
12  *lived in Pasadena. During the morning of April 23, 1986, sometime after Christopher*
13  *left for work, Trotter entered the Hartsough home by breaking a living room window.*
14  *Charlene, who usually attended college in the morning, apparently returned home*
15  *while Trotter was in the middle of the burglary. Trotter killed her by strangling her*
16  *with a telephone cord and bludgeoning her head with a large, heavy metal and*
17  *ceramic candlestick. Trotter ransacked the house and took a video cassette recorder*
18  *and Charlene's pearls.*

19       *Trotter turned himself in at the Pasadena police station before the murder was*
20  *discovered. He stated that he believed there was a warrant out for his arrest and he*
21  *wished to surrender. He had blood on his shoes and arm. Trotter was arrested on an*
22  *unrelated outstanding warrant for driving under the influence. He had a cocaine pipe*
23  *among his possessions when arrested, but appeared calm and had no trouble*
24  *communicating with officers. He did not appear to be under the influence of drugs.*
25  *///*

26

27       [4]    *For ease of reference, and with no disrespect, we will hereinafter refer*
28  *to the Hartsoughs by their first names.*

9

*Christopher discovered Charlene's body at approximately 1:00 p.m.  Trotter was thereafter connected to the murder.*

  *2. Defense evidence.*

  *Trotter contended that he lacked the intent to kill due to the fact he had been using cocaine and was intoxicated when he committed the crimes.  In support of that theory, Trotter called clinical psychologist Adrienne Davis, who testified that she examined Trotter in May 1987.  Trotter informed Davis that he had used cocaine before the murder, but had run out of the drug.  He intended to burglarize the Hartsough home to obtain money to purchase more drugs.  According to Trotter, he tried to find a house where no one was home.  However, Charlene returned home while he was burglarizing the house and a verbal and physical altercation ensued. When Charlene attempted to telephone police, Trotter strangled her with the telephone cord and struck her several times with the candlestick.*

  *Tests indicated Trotter's I.Q. was on the borderline between mild retardation and low-average mental functioning.  The testing process revealed underlying emotional instability, anger, and difficulty coping with life challenges, and a possible organic problem that contributed to his low intelligence. Davis believed Totter's I.Q. score was "somewhat of an underestimate of his abilities.  His expressive language was a lot better in talking to him than he came out in testing."  Trotter employed simplistic thinking but had the ability to "organize his world in the way that most people do," and there was no evidence he suffered from "thought disorders," i.e., an inability to perceive his environment and understand the reactions and statements of other persons.  Davis diagnosed Trotter as having a continuous substance abuse disorder and antisocial personality disorder, "which basically means a person who has difficulty following the rules, laws and so on of society," and who demonstrates "a pervasive pattern of disregard for and violation of the rights of others. . . ."*

  *Dr. Alex Stalcup, the medical director of the New Leaf Treatment Center, reviewed Davis's report on Trotter, as well as reports prepared by two other*

10

*psychiatrists and the police reports regarding the murder. Stalcup opined that Trotter's statements to Davis indicated he had used cocaine in combination with PCP for several days prior to the crimes. Stalcup testified that when addicts come out of a cocaine high, they are overwhelmed with the need to obtain more of the drug, operate in robotic states, and lose control of their actions. He opined that Trotter's actions were consistent with behavior by a drug addict desperate to obtain money or property in order to obtain more drugs. He further opined that it is not always readily apparent that an addict is under the influence of drugs.*

## PETITIONER'S CLAIMS

1.      Petitioner was denied his federal and state constitutional right to a reliable jury determination of the truth beyond a reasonable doubt of the special circumstance allegations when, in response to a question asking for the legal definition of "intent to kill," the trial court instructed the jury to use their own common understanding of the phrase. (See Pet. ¶ 10(a); Reply at 2-15).

2.      Petitioner was denied his federal and state constitutional right to the effective assistance of trial counsel when his trial counsel failed to object to the trial court's response to the jury question and request a "re-read back" of the jury instructions. (See Pet. ¶ 10(b); Reply at 2-15).

3.      The trial court abused its discretion when it failed to dismiss the special circumstances findings in the furtherance of justice and/or the interest of justice. (See Pet. ¶ 10(c)).

4.      The trial court abused its discretion when it failed to order a "Dianostic [sic] Study and Evaluation Report" to "get a better assessment" of petitioner. (See Pet. ¶ 10(d)).

5.      Petitioner was denied the effective assistance of trial counsel in connection with his sentencing hearing when his trial counsel (a) failed to interview prison officials, and subpoena them to testify about petitioner's behavior and conduct

11

1  in prison, and (b) filed a "<u>Dillon</u> motion" that was not applicable to petitioner's case.

2  (<u>See</u> Pet. at page following 6; Reply at 16-19).

3

4                                    **STANDARD OF REVIEW**

5          The standard of review applicable to petitioner's claims herein is set forth in 28

6  U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act

7  of 1996 ("AEDPA"):

8          "An application for a writ of habeas corpus on behalf of a person in custody

9          pursuant to the judgment of a State court shall not be granted with respect to

10         any claim that was adjudicated on the merits in State court proceedings unless

11         the adjudication of the claim--(1) resulted in a decision that was contrary to, or

12         involved an unreasonable application of, clearly established Federal law, as

13         determined by the Supreme Court of the United States; or (2) resulted in a

14         decision that was based on an unreasonable determination of the facts in light

15         of the evidence presented in the State court proceedings."

16

17         Under the AEDPA, the "clearly established Federal law" that controls federal

18  habeas review of state court decisions consists of holdings (as opposed to dicta) of

19  Supreme Court decisions "as of the time of the relevant state-court decision."

20  <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

21         Although a particular state court decision may be both "contrary to" and "an

22  unreasonable application of" controlling Supreme Court law, the two phrases have

23  distinct meanings.  <u>See</u> <u>Williams</u>, 529 U.S. at 391, 413.  A state court decision is

24  "contrary to" clearly established federal law if the decision either applies a rule that

25  contradicts the governing Supreme Court law, or reaches a result that differs from the

26  result the Supreme Court reached on "materially indistinguishable" facts.  <u>See</u> <u>Early</u>

27  <u>v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam);

28  <u>Williams</u>, 529 U.S. at 405-06.  When a state court decision adjudicating a claim is

1      contrary to controlling Supreme Court law, the reviewing federal habeas court is

2      "unconstrained by § 2254(d)(1)." <u>Williams</u>, 529 U.S. at 406.  However, the state

3      court need not cite or even be aware of the controlling Supreme Court cases, "so long

4      as neither the reasoning nor the result of the state-court decision contradicts them."

5      <u>Early</u>, 537 U.S. at 8.

6          State court decisions which are not "contrary to" Supreme Court law may only

7      be set aside on federal habeas review "if they are not merely erroneous, but 'an

8      <u>unreasonable</u> application' of clearly established federal law, or are based on 'an

9      <u>unreasonable</u> determination of the facts.'" <u>Early</u>, 537 U.S. at 11 (citing 28 U.S.C.

10     § 2254(d) and adding emphasis).  A state court decision that correctly identified the

11     governing legal rule may be rejected if it unreasonably applied the rule to the facts of

12     a particular case. <u>See</u> <u>Williams</u>, 529 U.S. at 406-10, 413 (<u>e.g.</u>, the rejected decision

13     may state <u>Strickland</u> rule correctly but apply it unreasonably); <u>Woodford v. Visciotti</u>,

14     537 U.S. 19, 24-27, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002)(per curiam).  However,

15     to obtain federal habeas relief for such an "unreasonable application," a petitioner

16     must show that the state court's application of Supreme Court law was "objectively

17     unreasonable." <u>Woodford</u>, <u>supra</u>; <u>Williams</u>, 529 U.S. at 413.  An "unreasonable

18     application" is different from an erroneous or incorrect one. <u>See</u> <u>Williams</u>, 529 U.S.

19     at 409-10; <u>see also</u> <u>Woodford</u>, 537 U.S. at 25; <u>Bell v. Cone</u>, 535 U.S. 685, 699, 122

20     S. Ct. 1843, 152 L. Ed. 2d 914 (2002).

21          In <u>Delgado v. Lewis</u>, 223 F.3d 976, 981-82 (9th Cir. 2000), the Ninth Circuit

22     observed that, where the state court has not provided a reasoned explanation for its

23     denial of the petitioner's claims, the federal court has no basis other than the record

24     for knowing whether the state court correctly identified the governing legal principle

25     or was extending the principle into a new context. Thus, "[f]ederal habeas review is

26     not de novo when the state court does not supply reasoning for its decision, but an

27     independent review of the record is required to determine whether the state court

28     clearly erred in its application of controlling federal law. . . .  Only by that

1 | examination may we determine whether the state court's decision was objectively
2 | reasonable." Delgado, 223 F.3d at 982; see also Allen v. Ornoski, 435 F.3d 946, 955
3 | (9th Cir.) (reiterating that "the independent review undertaken under Delgado is not
4 | the equivalent of de novo review"), cert. denied, 126 S. Ct. 1140 (2006); Himes v.
5 | Thompson, 336 F.3d 848, 853 (9th Cir.2003) ("Independent review of the record is
6 | not de novo review of the constitutional issue, but rather, the only method by which
7 | we can determine whether a silent state court decision is objectively unreasonable.").

**DISCUSSION**

**A.    Petitioner's third and fourth claims are not cognizable on federal habeas
review.**

In his third claim, petitioner contends that the trial court abused its discretion when it failed to dismiss the special circumstances findings in the furtherance of justice and/or the interest of justice. (See Pet. ¶ 10(c)). In his fourth claim, petitioner contends that the trial court abused its discretion when it failed to order a "Dianostic [sic] Study and Evaluation Report" to "get a better assessment" of petitioner. (See Pet. ¶ 10(d)).

Neither of these claims even is framed as a federal constitutional claim, and thus neither states a claim cognizable on federal habeas review. See 28 U.S.C. 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Smith v. Phillips, 455 U.S. 209, 221, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution."); see also, e.g., Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002) (rejecting as noncognizable claim that trial court had failed to exercise its discretion to strike a prior conviction), judgment vacated on other grounds, 538 U.S. 901 (2003).

14

**B.  Habeas relief is not warranted with respect to petitioner's claims concerning the trial court's response to the jury question.**

During jury deliberations, the jury sent the following question to the trial court: "What is the legal definition of 'intent to kill'?" (See CT 121).  The trial court had the jury brought into the courtroom, read the question, and stated:

> *My response is this: there is no definition of intent to kill beyond its common meaning in the English language.  So I would ask that you use your understanding of those three words, intent to kill, in determining whether or not there was, indeed, an intent to kill.  [¶] There's no mystery about it, and there's no further definition.  I don't want to be confusing you or be devious, but there really is no further definition.  [¶]  "Intent to kill" means just what those words indicate.  So you apply your understanding of the English language in interpreting that phrase, intent to kill.*  (4 RT 1503-04).

In his first claim, petitioner contends that he was denied his federal and state constitutional right to a reliable jury determination of the truth beyond a reasonable doubt of the special circumstance allegations when, in response to a question asking for the legal definition of "intent to kill," the trial court instructed the jury to use their own common understanding of the phrase.  (See Pet. ¶ 10(a); Reply at 2-15).  In his second claim, petitioner contends that he was denied his federal and state constitutional right to the effective assistance of trial counsel when his trial counsel failed to object to the trial court's response to the jury question and request a "re-read back" of the jury instructions.  (See Pet. ¶ 10(b); Reply at 2-15).[5]  Petitioner argues

---

[5]      To the extent that both claims purport to be based on the denial of petitioner's state constitutional rights, the claims are not cognizable on federal habeas (continued...)

15

that the trial court's failure to address the jury's confusion, together with the explanation provided by the trial court that there was no specialized legal meaning for the phrase, "negated" and "contradicted" the jury instructions on voluntary intoxication. (See Reply at 9-13).

In rejecting these claims when petitioner raised them on direct appeal,[6] the California Court of Appeal initially found that petitioner had waived his claim that the trial court's response was inadequate and misleading, by failing to object or request further response by the court. (See Lodged Doc. No. 2 at 6). However, because petitioner also was contending that his counsel was ineffective for failing to object to the trial court's response or request further clarification, the Court of Appeal proceeded to address the merits of petitioner's claim as follows:

> [CPC] Section 1138 imposes upon the trial court "the duty to provide the jury with information the jury desires on points of law." "If, however, the original instructions are themselves full and complete, the court has discretion under . . . section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information." It is not necessary to instruct jurors on the meaning of words in common usage which are presumed to be within the understanding of a person of ordinary intelligence.
>
> Trotter fails to point us to any legal authority suggesting that the phrase "intent to kill" has a technical, legal meaning apart from the

---

[5](...continued)
review under the authorities cited above in Section A.

[6]   Under Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991), it may be presumed that the California Supreme Court, by its silent denial of petitioner's Petition for Review raising the same claims, did not intend to change the California Court of Appeal's reasoned decision rejecting them. See Ylst, 501 U.S. at 803-04.

*common usage of the words, nor does he cite authority requiring a court to provide a different definition of "intent to kill" than what was given here. Trotter urges, however, that "[i]ntent to kill does have a specialized legal meaning in this case because voluntary intoxication may negate specific intent, and that is not a concept that would be obvious to a layperson." He complains that the trial court should have answered the jury's question by informing it that the intent to kill element "must be evaluated in the context of the evidence of [his] drug-induced intoxication and, if the jury believed that evidence," it was required to consider whether the intoxication impaired his ability to form a specific intent. Instead, he suggests the trial court's response negated CALJIC No. 4.21, the instruction discussing the relevance of voluntary intoxication to specific intent.*

*We are unpersuaded. "When reviewing a supposedly ambiguous jury instruction, we inquire whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." "Moreover, instructions are not considered in isolation. Whether instructions are correct and adequate is determined by consideration of the entire charge to the jury[,] rather than by reference to parts of an instruction or from a particular instruction."*

*Here, the instructions that were given to the jury provided the precise guidance that Trotter suggests. The jury was informed that, if it believed Trotter was intoxicated, it was required to consider the fact when evaluating the intent element. The jury was instructed to consider the instructions as a whole. Contrary to Trotter's argument, we see nothing in the record supporting the conclusion that the trial court's response would have caused the jury to ignore CALJIC No. 4.21. The court's response in no way suggested that CALJIC No. 4.21 was*

17

1        *superfluous or inapplicable.  We conclude there was no reasonable*

2        *likelihood that the jury misunderstood the court's statement as Trotter*

3        *suggests.* (Lodged Doc. No. 2 at 6-7) (Internal citations, some internal

4        quotation marks, and one footnote omitted).

5

6        1.     <u>Habeas relief is not warranted with respect to petitioner's ineffective</u>

7                <u>assistance of trial counsel claim.</u>

8        Because respondent is contending that petitioner's first claim is procedurally

9  defaulted (<u>see</u> Ans. at 15-16), the Court will address petitioner's ineffective assistance

10  of counsel claim first.

11        In <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674

12  (1984), the Supreme Court held that there are two components to an ineffective

13  assistance of counsel claim: "deficient performance" and "prejudice."

14        "Deficient performance" in this context means unreasonable representation

15  falling below professional norms prevailing at the time of trial. <u>See</u> <u>Strickland</u>, 466

16  U.S. at 688-89. To show "deficient performance," petitioner must overcome a "strong

17  presumption" that his lawyer "rendered adequate assistance and made all significant

18  decisions in the exercise of reasonable professional judgment." <u>See</u> 460 U.S. at 690.

19  Further, petitioner "must identify the acts or omissions of counsel that are alleged not

20  to have been the result of reasonable professional judgment." <u>Id.</u>  The Court must

21  then "determine whether, in light of all the circumstances, the identified acts or

22  omissions were outside the range of professionally competent assistance." <u>Id.</u>  The

23  Supreme Court in <u>Strickland</u> recognized that "it is all too easy for a court, examining

24  counsel's defense after it has proved unsuccessful, to conclude that a particular act or

25  omission of counsel was unreasonable." <u>Strickland</u>, 466 U.S. at 689. Accordingly, to

26  overturn the strong presumption of adequate assistance petitioner must demonstrate

27  that "the challenged action cannot reasonably be considered sound trial strategy under

28  ///

1   the circumstances of the case." <u>Lord v. Wood</u>, 184 F.3d 1083, 1085 (9th Cir. 1999),

2   <u>cert.</u> denied, 528 U.S. 1198 (2000).

3         To meet his burden of showing the distinctive kind of "prejudice" required by

4   <u>Strickland</u>, petitioner must affirmatively "show that there is a reasonable probability

5   that, but for counsel's unprofessional errors, the result of the proceeding would have

6   been different.  A reasonable probability is a probability sufficient to undermine

7   confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. <u>See also</u> <u>Lockhart v.</u>

8   <u>Fretwell</u>, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993) (noting that the

9   "prejudice" component "focuses on the question whether counsel's deficient

10  performance renders the result of the trial unreliable or the proceeding fundamentally

11  unfair").

12        It is unnecessary to address both <u>Strickland</u> requirements if the petitioner makes

13  an insufficient showing on one. <u>Strickland</u>, 466 U.S. at 697("If it is easier to dispose

14  of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course

15  should be followed."); <u>see also</u> <u>Williams v. Calderon</u>, 52 F.3d 1465, 1470 n.3 (9th Cir.

16  1995), <u>cert.</u> denied, 516 U.S. 1124 (1996).

17        Here, it follows from the California Court of Appeal's finding and conclusion

18  that the trial court did not err in responding as it did to the jury's question that

19  petitioner is unable to make the requisite showing of deficient performance with

20  respect to this ineffective assistance of trial counsel claim. The failure to make a futile

21  objection or motion does not constitute ineffective assistance of counsel. <u>See</u> <u>James</u>

22  <u>v. Borg</u>, 24 F.3d 20, 27 (9th Cir.), <u>cert.</u> denied, 513 U.S. 935 (1994); <u>Morrison v.</u>

23  <u>Estelle</u>, 981 F.2d 425, 429 (9th Cir. 1992), <u>cert.</u> denied, 508 U.S. 920 (1993). Further,

24  petitioner has failed to convince the Court that, if his trial counsel had objected to the

25  trial court's response and requested a "re-read back" of the jury instructions, there is

26  a reasonable probability that either (a) the trial court would have sustained the

27  objection and instructed the jury differently, or (b) the outcome of the trial would have

28  been different.

1    The Court therefore has no basis for finding or concluding that the California

2    courts' rejection of this ineffective assistance of trial counsel claim was either contrary

3    to or involved an unreasonable application of clearly established Supreme Court law.

4

5         2.    Petitioner's first claim is procedurally defaulted.

6         As noted above, respondent contends that petitioner's first claim (i.e., that the

7    trial court's response denied him his federal constitutional right to a reliable jury

8    determination of the truth beyond a reasonable doubt of the special circumstance

9    allegations) is procedurally defaulted.

10        In order for a claim to be procedurally defaulted for federal habeas corpus

11   purposes, the opinion of the last state court rendering a judgment in the case must

12   clearly and expressly state that its judgment rests on a state procedural bar. Harris v.

13   Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989); see also Coleman

14   v. Thompson, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991);

15   Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992).

16        Under California law, the failure to interpose a specific and timely objection in

17   the trial court on the ground advanced on review independently serves as a procedural

18   bar to consideration of the issue by the appellate courts. See, e.g., People v. Alvarez,

19   14 Cal. 4th 155, 186, 926 P.2d 365, 58 Cal. Rptr. 2d 385 (1996), cert. denied, 522

20   U.S. 829 (1997); People v. Champion, 9 Cal. 4th 879, 918-19, 39 Cal. Rptr. 2d 547,

21   891 P.2d 93 (1995), cert. denied, 516 U.S. 1049 (1996); People v. Johnson, 6 Cal. 4th

22   1, 51, 23 Cal. Rptr. 2d 593, 859 P.2d 673 (1993), cert. denied, 513 U.S. 844 (1994).

23        Here, the California Court of Appeal "clearly and expressly" invoked the

24   foregoing procedural bar when it initially found that petitioner had waived his claim

25   that the trial court's response was inadequate and misleading, by failing to object or

26   ///

27   ///

28   ///

20

1   request further response by the court. (See Lodged Doc. No. 2 at 6).[7] It makes no

2   difference that the California Court of Appeal also addressed this defaulted claim on

3   the merits in the alternative. See Harris, 489 U.S. at 264 n.10; Carringer v. Lewis, 971

4   F.2d 329, 333 (9th Cir. 1992) (en banc), cert. denied, 507 U.S. 992 (1993); Thomas

5   v. Lewis, 945 F.2d 1119, 1122-23 (9th Cir. 1991).

6          The failure to comply with a state's contemporaneous objection rule results in

7   a procedural default which bars federal consideration of the issue, unless petitioner

8   can demonstrate both "cause" for his failure to raise the objection at trial and actual

9   "prejudice" accruing from the error. See Coleman, 501 U.S. at 750; Wainwright v.

10  Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); Hines v. Enomoto,

11  658 F.2d 667, 673 (9th Cir. 1989).

12         In order to demonstrate "cause" for a procedural default, petitioner must show

13  "that some objective factor external to the defense impeded counsel's efforts to

14  comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488; 106

15  S. Ct. 2639, 91 L. Ed. 2d 397 (1986).  Here, petitioner has attempted to show "cause"

16  by claiming that he received ineffective assistance of counsel when his trial counsel

17  failed to object to the trial court's response to the jury question and request a "re-read

18  back" of the jury instructions.   In Murray, the Supreme Court did state that

19  "constitutionally ineffective assistance of counsel . . . is cause for a procedural

20  default." Murray, 477 U.S. at 488; see also Bonin v. Calderon, 77 F.3d 1155, 1158

21  ///

22  ///

23

24  _____

        [7]    The California Supreme Court's summary denial of petitioner's ensuing
25  Petition for Review constitutes an adoption of the Court of Appeal's rejection of this
26  claim on procedural grounds.  See Thomas, 979 F.2d at 749 ("If the intermediate
    appellate court judgment rests on procedural default and the state Supreme Court
27  denies review without explanation, the federal courts will consider the claim
28  procedurally defaulted.").

1   (9th Cir.), cert. denied, 516 U.S. 1143 (1996).[8] However, the Supreme Court further

2   stated that "[a]ttorney error short of ineffective assistance of counsel does not

3   constitute cause for a procedural default." Murray, 477 U.S. at 492; see also Bonin,

4   supra ("counsel's ineffectiveness will constitute cause only if it amounts to an

5   'independent constitutional violation'"). Consequently, for the alleged ineffective

6   assistance of counsel to constitute the requisite "cause" for a procedural default, the

7   petitioner must satisfy both Strickland prongs. See, e.g., Cockett v. Ray, 333 F.3d

8   938, 943-44 (9th Cir. 2003); Loveland v. Hatcher, 231 F.3d 640, 644 (9th Cir. 2000);

9   Vansickel v. White, 166 F.3d 953, 958 (9th Cir.), cert. denied, 528 U.S. 965 (1999);

10  Featherstone v. Estelle, 948 F.2d 1497, 1506-07 (9th Cir. 1991); White v. Lewis, 874

11  F.2d 599, 604 (9th Cir. 1989).

12      Here, it follows from the Court's findings above with respect to petitioner's

13  ineffective assistance of trial counsel claim that petitioner is unable to make the

14  requisite showing of deficient performance and has failed to make the requisite

15  showing of prejudice that petitioner has not established the requisite "cause" for his

16  procedural default. Because petitioner must demonstrate both cause and prejudice

17  (see Murray, 477 U.S. at 494), his failure to establish the requisite "cause" for his

18  procedural default obviates the need for the Court to even reach the issue of whether

19  petitioner has demonstrated the requisite "prejudice" from the procedural default. See

20  Thomas v. Lewis, 945 F.2d at 1123 n.10.

21      The Supreme Court has recognized an exception to the requirement that the

22  petitioner demonstrate both "cause" and "prejudice," where the petitioner can

23  demonstrate that failure to consider the procedurally defaulted claims will result in a

24

---

25      [8]    In Murray, the Supreme Court also held that a claim of ineffective

26  assistance of counsel must be presented to the state courts as an independent claim

27  before it may be used to establish cause for a procedural default. See Murray, 477
    U.S. at 489. Here, petitioner did present this same ineffective assistance of counsel

28  claim to the state courts as an independent claim.

1   fundamental miscarriage of justice because he is actually innocent of the crimes of

2   which he was convicted. See, e.g., Coleman, 501 U.S. at 750; Murray, 477 U.S. at

3   496; Noltie v. Peterson, 9 F.3d 802, 806 (9th Cir. 1993). However, in order to qualify

4   for this "miscarriage of justice" exception, the petitioner must "support his allegations

5   of constitutional error with new reliable evidence--whether it be exculpatory scientific

6   evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not

7   presented at trial." Schlup v. Delo, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d

8   808 (1995) (recognizing that such evidence "is obviously unavailable in the vast

9   majority of cases"). Further, to establish the requisite probability that a constitutional

10   violation probably has resulted in the conviction of one who is actually innocent, "the

11   petitioner must show that it is more likely than not that no reasonable juror would

12   have convicted him in light of the new evidence." 513 U.S. at 327. Here, petitioner

13   has not even purported to adduce any new reliable evidence or make the requisite

14   showing of actual innocence; nor could he.

15

16   **C.    Habeas relief is not warranted with respect to petitioner's ineffective**

17   **assistance of counsel at sentencing claim(s).**

18   The record reflects that at petitioner's sentencing hearing, trial counsel

19   presented the testimony of petitioner's older brother and sister, his former wife, and

20   his daughter regarding the change in petitioner's behavior since his incarceration and

21   the reasons they believed he deserved an opportunity at parole in the future. (2-A RT

22   1802-10). In addition, trial counsel filed a sentencing memorandum in which he

23   argued that petitioner's sentence constituted cruel and unusual punishment; and that

24   petitioner did not intend to kill his victim and, consequently, he should be given the

25   possibility of parole. In support of his arguments for a reduction in sentence to life

26   with the possibility of parole, trial counsel relied in large part on People v. Dillon, 34

27   Cal. 3d 441, 194 Cal. Rptr. 390, 668 P.2d 697 (1983), where the California Supreme

28   Court had held that the statutorily prescribed penalty of life imprisonment for a

23

defendant convicted of felony murder constituted cruel and unusual punishment under the circumstances presented. (See CT 128-44). Although the trial court commended trial counsel for the quality and detail of his sentencing memorandum, it nevertheless found that Dillon was distinguishable and that the proper sentence under California law was life without the possibility of parole both because of petitioner's initial plea bargain and because the sentence did not constitute cruel and unusual punishment. (See 2-A RT 1801-02, 1816-21).

Petitioner contends in his fifth and final claim that he was denied the effective assistance of trial counsel in connection with his sentencing hearing when his trial counsel (a) failed to interview prison officials and subpoena them to testify about petitioner's behavior and conduct in prison, and (b) filed a "Dillon motion" that was not applicable to petitioner's case. In his Reply, petitioner asserts that he provided trial counsel with the names of several correctional officers who could testify at petitioner's sentencing hearing regarding his positive behavior while incarcerated. Petitioner contends that counsel was ineffective for waiting too long to contact the correctional officers, failing to contact all of the individuals whose names petitioner provided, and failing to subpoena the individuals to testify. (Reply at 16-19, attached declaration of petitioner). Petitioner includes as exhibits to his Reply a declaration from one correctional officer stating that he was not contacted by petitioner's trial counsel and 8 letters from trial counsel to various prison officials as well as 4 letters to other individuals requesting the recipients contact trial counsel if they would be willing to testify on behalf of petitioner at the sentencing hearing that was scheduled approximately 10 days after the dates of the letters. (Reply, Exhs. A-C).

With respect to petitioner's ineffective assistance claim based on trial counsel's alleged failure to interview prison officials and subpoena them to testify about petitioner's behavior and conduct in prison, the Court finds that petitioner's has not met his burden of making the requisite showing of prejudice because he has failed to show what their testimony would have been, or how their testimony might have

1  changed the outcome of the sentencing hearing. See United States v. Berry, 814 F.2d
2  1406, 1409 (9th Cir. 1987). As noted by the California Court of Appeal, a California
3  trial court has no statutory discretion to strike a special circumstance finding to reduce
4  the punishment.   However, a statutorily imposed punishment may violate the
5  constitutional prohibition on cruel and unusual punishment if it is grossly
6  disproportionate to a particular defendant's individual culpability, and a trial court
7  therefore does have the authority to prevent imposition of a statutorily mandated
8  punishment if it would violate the constitutional prohibition on cruel and unusual
9  punishment. (See Lodged Doc. No. 2 at 8). The Court of Appeal further noted that
10 petitioner's "purported rehabilitation, completion of his General Education Degree,
11 and his expressed remorse for the murder, while laudable, [did] not suffice to make
12 his sentence unconstitutionally cruel or unusual." (See Lodged Doc. No. 2 at 11).
13 Based on the foregoing statement, the Court finds that petitioner has not met his
14 burden of showing that, but for the failure of trial counsel to call prison officials at the
15 sentencing hearing to present additional testimony about petitioner's supposed positive
16 behavior and conduct in prison, there is a reasonable probability that the outcome of
17 petitioner's sentencing hearing would have been different.

18      With respect to petitioner's ineffective assistance claim based on trial counsel's
19 purported filing of a "Dillon motion" that was not applicable to petitioner's case, the
20 fact that both the trial court and California Court of Appeal ultimately concluded that
21 Dillon was distinguishable does not render trial counsel's citation of and reliance on
22 the Dillon case in his sentencing memorandum "outside the range of professionally
23 competent assistance." Indeed, the trial court commended trial counsel for the quality
24 and detail of his sentencing memorandum, calling it "one of the best I've seen,
25 frankly." (See 2-A RT 1801-02). Petitioner also has failed to convince the Court that,
26 but for trial counsel's purported filing of a "Dillon motion" that was not applicable to
27 petitioner's case, there is a reasonable probability that the outcome of petitioner's
28 sentencing hearing would have been different.

The Court therefore has no basis for finding or concluding that the California courts' rejection of petitioner's ineffective assistance of counsel at sentencing claim(s) was either contrary to or involved an unreasonable application of clearly established Supreme Court law.

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED:  September 29, 2006

ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

26